FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

03 MAR 17 PM 1: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

BRIAN E. WIGINTON,  }
 }
    Plaintiff,  }
 }
v.  } Case No. CV-00-B-3692-NW
 }
FRANKLIN MANUFACTURING, INC.,  }
 }
    Defendant.  }

ENTERED
MAR 17 2003

## MEMORANDUM OPINION

Currently before the court are a Motion for Summary Judgment, a Motion To Strike Plaintiff's Responsive Submission, and a Motion to Strike Portions of Plaintiff's Opposition to Motion for Summary Judgment and Evidentiary Submission in Opposition to Motion for Summary Judgment filed by Defendant Franklin Manufacturing Company, Incorporated[1] ("defendant" or "Franklin"). Brian E. Wiginton ("plaintiff" or "Wiginton") filed this action alleging discrimination under the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a), and state law claims of breach of contract and fraud.[2] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court concludes that defendants' motion for summary judgment will be granted. Defendant's motion to strike plaintiff's responsive pleading will be denied. Defendant's motion to strike portions of

---

[1] Originally plaintiff also named as a defendant Dr. Ostap Woloshuk. (*See* Amended Compl.) Plaintiff's claims against Dr. Woloshuk were dismissed with prejudice by order dated March 8, 2002. (*See* Order of March 8, 2002.)

[2] Plaintiff also alleged interference with contractual relationship against Dr. Woloshuk. (*See* Amended Compl. ¶ 26; *see supra* n.1.)

plaintiff's opposition brief and evidentiary submission will be granted in part and denied in part.

## FACTUAL SUMMARY

On or about February 21, 2000, Wiginton applied for a position as an assembly electrician with Franklin. (*See* Employment Application, attached as Ex. 1 to Def.'s Evidentiary Submission ("DX").) Johnny Frederick, who knew plaintiff, initially interviewed him. (Frederick Dep. at 31, 80, 105, attached as DX Ex. 2; Wiginton Dep. at 42, 73, attached as Ex. 1 to Pl.'s Evidentiary Submission in Opp'n to Def.'s Mot. for Summ. J. ("PX").) During the interview, Frederick asked Wiginton if "he was on anything," and Wiginton told Frederick that he was taking three drugs for a sleep disorder and panic attacks. (Wiginton Dep. at 78-79, 142.) Frederick replied that as long as the drugs were prescribed, there should not be any problem. (*Id.*)[3] Following Wiginton's initial interview, Frederick recommended Wiginton for employment as an assembly electrician to Terry Springer, Franklin's Human Resources Manager. (Frederick Dep. at 30.)

On February 21, 2000, Wiginton met with Springer. (Springer Aff. ¶ 6, attached as DX Ex. 5.) Wiginton completed the paperwork required for employment with Franklin, including an authorization for drug testing and a physical examination. (*Id.*) Springer asked Wiginton if he

---

[3] Frederick's account of these facts is contrary to that of plaintiff. According to Frederick, at the initial interview he informed Wiginton that he would have to successfully pass a drug screen and physical examination before he would be permitted to work as an assembly electrician. (Frederick Dep. at 33-35.) Wiginton did not disclose to Frederick that he was using any prescription medications, and had Wiginton disclosed the information, Frederick would have "at least investigated the effects of the medication" before recommending Wiginton for the job. (*Id.*) However, in reviewing a motion for summary judgment, the court must view the facts in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Therefore, the court accepts as true, for the purpose of this motion, plaintiff's version of the facts.

2

was taking any medications, and Wiginton responded that he was taking Xanax for panic attacks and Elavil and Placidyl for a sleep disorder. (Wiginton Resp. to Def.'s Interrogatories No. 15, attached as DX Ex. 6; Wiginton Dep. at 85-87.) Springer replied that Wiginton should give this information to the doctor at the drug screen and physical examination. (*Id.*) Springer added that there was no problem with Wiginton taking the drugs as long as they were prescribed. (*Id.*) Wiginton knew that he would be hired only if he passed the drug screen and physical exam. (Wiginton Dep. at 82, 88-89, 96.)

Plaintiff reported to Dr. Woloshuk for his drug screen and physical. (Compl. ¶ 8.) He informed the nurse of the prescription medicines he was taking and that he was being treated for a sleep disorder. (*Id.*) Following the physical and the drug screen, plaintiff was informed that he had passed both. (*Id.*) Springer told Wiginton he passed both and was hired. (*Id.* at 139, 141.) Frederick also testified that Wiginton had passed the drug screen and physical. (Frederick Dep. at 75-77.)

However, on February 21, 2000, Dr. Woloshuk's office contacted Springer. (Springer Aff. ¶ 11.) Dr. Woloshuk's nurse explained that Wiginton had tested positive for three prescription medications that were mood-altering drugs. (*Id.*) It was Dr. Woloshuk's opinion that these medications impaired Wiginton for work in the manufacturing setting. (*Id.*) Springer requested that Dr. Woloshuk confirm the information in writing. (*Id.*) Dr. Woloshuk sent a letter to Springer, stating that "Mr. Wiginton is in sufficient physical condition for employment, however, he is on 3 prescription medications which are mood altering drugs." (Letter from Dr. Woloshuk dated February 22, 2000 ("February 21 Letter"), attached as DX Ex. 7; Springer Aff. ¶ 12.) Dr. Woloshuk felt that "these medications would render [Wiginton] impaired for

employment in the manufacturing setting." (*Id.*) Following his receipt of Dr. Woloshuk's letter, Springer informed Wiginton that Franklin would not employ him as an assembly electrician based on Dr. Woloshuk's medical opinion that Wiginton would pose a safety threat to himself and others in the plant. (Springer Aff. ¶ 15.)

Dr. Woloshuk later outlined Wiginton's medications, dosages, and the use and effect of each. (Letter from Dr. Woloshuk dated April 17, 2000 ("April 17 Letter"), attached as DX Ex. 8.) With respect to Wiginton's employment, Dr. Woloshuk stated:

> As stated in my previous letter of February 22, 2000, I feel that Mr. Wiginton would not be a candidate for employment in the manufacturing setting, as he is on prescription medication which significantly impairs his ability to operate machinery.
> Mr. Wiginton gave a history of panic attacks for which the medication is prescribed. This condition does not render him disabled, the medication makes employment in a machine shop hazardous for Mr. Wiginton as well as for other persons employed there.

(Letter from Dr. Woloshuk dated August 15, 2000 ("August 15 Letter"), attached as DX Ex. 10.)

Dr. Woloshuk then referred Wiginton's chart to Dr. Guy Walker, a Licensed Professional Counselor, for review. Regarding Wiginton's case, Dr. Walker stated:

> I have reviewed the activity restrictions of an individual who is taking Elavil, Xanax, and Placidyl. . . . Hiring a person on these medications for a job that violates these restrictions[, including driving, working at heights, or working around machinery or hazards,] would be unsafe and place the employee and those around him in unnecessary danger.

(Letter from Dr. Walker dated August 17, 2000 ("August 17 Letter"), attached at DX Ex. 12.)

On August 21, 2000, Dr. Woloshuk stated that his recommendation not to hire Wiginton for the available position:

> was based on the understanding that the position required the individual to climb and work at heights on machinery. . . [that] [t]he individual would be assembling and mounting electrical components necessary for the conduction of electricity.

>Along with the assembly and mounting of the components, quality testing would also have to be performed, using high voltage electrical test equipment. He would also have to operate a variety of power tools.

(Letter from Dr. Woloshuk dated August 21, 2000 ("August 21 Letter"), attached as DX Ex. 11.)

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; see Fed. R. Civ. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury. *Id.* Therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. The nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

### I. ADA Claim

#### A. Prima Facie Case

The Americans with Disabilities Act prohibits "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims." *Hilburn v. Murata Electronics North Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that, with or without reasonable accommodations, he could perform the essential functions of his job; and (3) that he was discriminated against because of his disability. *Terrell v. U.S. Air*, 132 F.3d 621, 624 (11th Cir. 1998). Under the ADA, a person is considered disabled if he suffers from a mental or physical impairment that substantially limits one or more of his major life activities; has a record of such impairment; or is regarded as having such an impairment. 42 U.S.C. § 12102(2). In this case, plaintiff claims that Franklin violated the ADA when Frederick

6

and Springer asked improper questions during plaintiff's interviews. (Pl.'s Br. at 7-8.) Plaintiff also claims that Franklin regarded him as having a disability and terminated him because of it. (*Id.* at 9-14.) The court disagrees and finds that plaintiff has not established a prima facie case of disability discrimination in violation of the ADA.

### 1. *Improper Interview Questions*

Plaintiff contends that during his interview, Franklin and Springer improperly asked what medications he was taking. According to plaintiff, defendant violated the ADA when it posed these questions. (Pl.'s Br. at 7-8.) Franklin and Springer dispute that they asked the questions and say that plaintiff volunteered the information. Preemployment questions regarding an applicant's disabilities are improper and an entity covered by the ADA cannot conduct a medical examination except as an "entrance examination." 42 U.S.C. § 12112(d). A covered entity may condition an offer of employment on the results of a medical examination under certain conditions, including that the covered entity require such examination of all entering employees. *Id.* at § 12112(d)(3)(A). A covered entity may require a medical examination and may inquire as to whether the employee has a disability and the nature and severity of the disability if the examination or inquiry is shown to be job-related and consistent with business necessity. *Id.* at § 12112(d)(4). Regardless of whether Springer and Frederick asked or plaintiff volunteered the names of the medications he took for a sleep disorder and panic attacks, Frederick and Springer told him he was hired if he passed the drug screen and physical examination. It was only after Dr. Woloshuk advised Franklin not to hire plaintiff that he was not hired. Even assuming the questions, if asked, violated the statute, plaintiff has offered no evidence that he was damaged as a result of the improper questions, and the claim fails as a matter of law.

### *2. Whether Plaintiff Was Regarded As Having A Disability*

Plaintiff also contends that he meets the ADA standard for disability because Franklin regarded him as having a substantially limiting impairment. (Pl.'s Br. at 9-14.) The court disagrees.

An employer violates the ADA "when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Sutton*, 527 U.S. at 490. This violation occurs when: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual non-limiting impairment substantially limits one or more major life activities. *Id.* at 489. "In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* With respect to "perceived impairments," the Eleventh Circuit has observed: "As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant. In this context, then, a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Gordon v. E.L. Hamm & Assocs.,Inc.*, 100 F.3d 907, 913 (11th Cir. 1996) (citations omitted).

There is no evidence before the court that plaintiff was perceived as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes. The evidence reflects that, based on Dr. Woloshuk's medical opinion that Wiginton's medications impaired him for employment in the manufacturing setting, defendant did not hire

8

plaintiff as an assembly electrician. Dr. Woloshuk advised Franklin that the medications made employment in a machine shop hazardous for plaintiff and others employed there. Dr. Woloshuk stated, and plaintiff has not presented any contrary evidence, that he based his recommendation that Franklin not hire plaintiff on the nature of the position for which plaintiff was being hired. To violate the ADA, defendant had to base its decision regarding Wiginton's employment on a physical or mental impairment, real or imagined, and regard that impairment as "substantially limiting a major life activity." *See Sutton v. United Air Lines*, 527 U.S. 471, 489 (1989). "Substantially limiting a major life activity" does not include the "inability to perform a single, particular job." *See Whitter v. Delta Air Lines*, 138 F.3d 1366, 1370 (11th Cir. 1998).

Wiginton has not produced sufficient evidence that Franklin regarded him as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes. Franklin did not hire Wiginton to work as an assembly electrician based on Dr. Woloshuk's opinion that plaintiff would be a hazard to himself and others in that setting. Because plaintiff has not established that he is disabled under the ADA, his claim fails as a matter of law.

### B. Pretext

Even assuming a prima facie case, plaintiff's claim fails because he has not established that defendant's legitimate, nondiscriminatory reason for the adverse action was a pretext for disability discrimination. The "pretext" analysis is governed by the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) test, later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997). Under this approach, the plaintiff bears the initial burden of

establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant succeeds in carrying this burden, then the plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives (*i.e.*, discrimination or retaliation). *Burdine*, 450 U.S. at 253. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *See Combs*, 106 F.3d at 1529; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

    Plaintiff has not offered evidence sufficient to discredit in the mind of a reasonable juror the nondiscriminatory reason advanced by defendant for its actions. Franklin articulated that it based its decision not to retain Wiginton as an employee on Dr. Woloshuk's report that plaintiff's medications rendered him a threat to the safety of himself and his co-workers in the manufacturing setting. Wiginton has offered no evidence that this articulated reason is pretext for discrimination. Therefore, plaintiff's claim is due to be dismissed.

## II. Breach of Contract Claim

    In Alabama, the general rule is that contracts of employment are presumed to be at-will, terminable at the pleasure of the employer, with or without justification. *See Udcoff v. Freidman*, 614 So. 2d 436, 438 (Ala. 1993) ("Without a clear and unequivocal offer of employment for a specific time or for the employee's lifetime, the contract is merely for at-will

employment; such employment may be terminated at the pleasure of the employer, with or without justification."); *Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 311 (Ala. 1992) ("The law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied."), *cert. denied*, 507 U.S. 1031 (1993). "Permanent" employment under Alabama law means "employment for as long as the employer is in business and needs the services the employee provides, and the employee is willing and able to do his work and gives no cause for discharge." *Green v. City of Hamilton, Housing Auth.*, 937 F.2d 1561, 1564 (11th Cir. 1991). To establish that an employment contract is "permanent," and thus not terminable "at will," a plaintiff must show: (1) that there was a clear and unequivocal offer of "permanent" employment; (2) that the employee provided some substantial consideration for the contract apart from the services to be rendered; and (3) that the individual making the offer had authority to bind the employer. *Green*, 937 F.2d at 1564; *Lee v. City of Gadsden*, 592 So. 2d 1036, 1038 (Ala. 1992); *Hoffman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987). The Alabama Supreme Court has consistently refused to carve out any public policy exceptions to the employment-at-will doctrine. *Salter v. Alfa Ins. Co.*, 561 So. 2d 1050, 1053 (Ala. 1990) (stating that the employer has the right to terminate an employee's contract, even if it does so for a malicious or other improper reason); *Williams v. Killough*, 474 So. 2d 680, 681 (Ala. 1985) (declining to modify the employee-at-will doctrine); *Reich v. Holiday Inn*, 454 So. 2d 982 (Ala. 1984) (finding nothing to justify the adoption of an exception to the longstanding and well-developed rule of at will employment).

The facts establish that Wiginton was an at will employee. He has produced no evidence of a "clear and unequivocal offer of lifetime employment or employment of definite duration" to

establish that the employment contract is not at will. *See Hoffman-LaRoche*, 512 So. 2d at 728. Because Wiginton has not produced evidence that his employment relationship with Franklin, if it constituted an employment contract at all, was of a definite duration, his employment was at will. As such, it was terminable by either party at any time and for any reason, and plaintiff's breach of contract claim will be dismissed.

### III. Fraud Claim[4]

To establish fraud in Alabama, plaintiff must establish that defendant misrepresented a material fact on which plaintiff relied to his detriment. *Osborn v. Custom Truck Sales & Serv.*, 562 So. 2d 243 (Ala. 1990); *see also, St. Clair Fed. Sav. Bank v. Rozelle*, 653 So. 2d 986, 988 (Ala. 1995). However, "the law places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future." *National Sec. Ins. Co. v. Donaldson*, 664 So. 2d 871, 876 (Ala. 1995). "[F]or fraud to be predicated upon a promise, it is essential that the promisor intended not to perform at the time of making the promise." *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981). To establish a case of promissory estoppel fraud, plaintiff must show that defendant had no intent to perform at the time the misrepresentation was made and that defendant had a present intent to deceive. *Palm Harbor Homes, Inc. v. Crawford*, 689 So. 2d 3 (Ala. 1997). Furthermore, plaintiff's employment status is a critical factor in determining whether he can prove the elements of fraud. *Stutts v. Sears, Roebuck & Co.*, 855 F. Supp. 1574, 1582 (N.D. Ala. 1994) (citing *Salter v. Alfa*

---

[4] To the extent that Wiginton alleges a fraudulent suppression claim, there is no evidence that Franklin suppressed any material information in connection with Wiginton's offer of employment and the claim is without merit. *See Palm Harbor Homes v. Crawford*, 689 So. 2d 3, 12 (Ala. 1997); *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 846 (Ala. 1993); 1975 Ala. Code § 6-5-102.

12

*Ins. Co.*, 561 So. 2d 1050, 1053-54 (Ala.1990)). The fact of employment at will raises a barrier to a fraud claim because Alabama law establishes that plaintiff must show that he suffered actual injury. *Id.* Because an employee at will may be terminated at any time and for any reason, plaintiff cannot establish injury. *Id.*

According to plaintiff, Franklin represented to him that if he passed the drug screen and physical examination, he would be hired. Wiginton passed both and was told by Springer that he had been hired and should purchase steel toed boots for safety, which he did. Wiginton was not hired. Therefore, plaintiff alleges that defendant misrepresented that he would be hired if he passed the drug screen and physical examination. Plaintiff claims he was injured when he relied on Franklin's representation and purchased safety boots. Franklin contends that it had every intention of hiring plaintiff until Dr. Woloshuk advised of the potential risk to Wiginton and his coworkers. (Def.'s Br. at 16.) Defendant also contends that Wiginton cannot prove fraud because he suffered no injury. (*Id.* at 17-18.)

Franklin conditioned Wiginton's employment on him passing a drug screen and physical examination. Despite the fact that Wiginton was prescribed the medications indicated by his drug screen, Dr. Woloshuk advised Franklin that the influence of these medications impaired Wiginton's ability to work in the manufacturing setting without posing a safety risk to himself and others working around him. Upon Dr. Woloshuk's recommendation, Franklin decided not to continue Wiginton's employment. The evidence supports a finding that Franklin intended to hire Wiginton as an assembly electrician until it was advised by the company doctor not to do so. Because Wiginton's employment was "at will," he is precluded from establishing reasonable reliance, causation, or damage. Therefore, Wiginton's claim for fraud will be dismissed.

## IV. Motions to Strike

Franklin filed a motion to strike plaintiff's responsive submission as untimely. The court is of the opinion that Franklin was not prejudiced by the late filing, and the motion, therefore, will be granted.

Franklin also filed a motion to strike portions of plaintiff's opposition to the motion for summary judgment and evidence submitted in support thereof. Defendant offers that plaintiff relies on statements of Wiginton's treating psychologist, Dr. Stanley.[5] Defendant contends that these statements are inadmissible hearsay under the Federal Rules of Evidence Rules 801 and 802. The court agrees, and the statements will be stricken.

Franklin also moved to strike all references in Wiginton's opposition to the motion for summary judgment to pages 142 and 166-167 of Wiginton's Deposition as leading, lacking proper foundation, and mischaracterizing prior testimony. The court disagrees and finds these statements admissible.

## **CONCLUSION**

For the reasons stated herein, the court will grant defendant's Motion for Summary Judgment. Defendant's motion to strike plaintiff's responsive submission will be denied. Defendant's motion to strike portions of plaintiff's brief and evidentiary submission in opposition to defendant's motion for summary judgment will be granted in part and denied in part. An order in accordance with this opinion will be entered contemporaneously herewith.

---

[5] Specifically, plaintiff offers Dr. Stanley's opinion that Wiginton is qualified to perform the job Wiginton sought at Franklin. (*See* Wiginton Dep. at 72.) Plaintiff also offers Dr. Stanley's opinion that he disagrees with Dr. Woloshuk's assessment that Wiginton presents a safety threat to himself and others if employed as an electrician at Franklin. (*See* Wiginton Dep. at 123; Pl.'s Br. at 10 n.5.)

14

**DONE** this \_\_\_17th\_\_\_ day of March, 2003.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge